# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN FLYNN *et al.*,
      *Plaintiffs*,

      v.                                          No. 3:22-cv-1065 (JAM)

VERIZON WIRELESS *et al.*,
      *Defendants*.

## ORDER OF DISMISSAL

Plaintiffs John Flynn, Chris Kelly, and Heather Lindsey have filed a *pro se* complaint alleging primarily that 5G cellular networks pose grave risks to human health and are being used as weapons by government and industry to harm and control the public. Because the complaint as amended does not establish plausible grounds for the Court's exercise of jurisdiction and in the alternative fails to allege plausible grounds for relief, I will grant the defendants' motions to dismiss with prejudice and dismiss the plaintiffs' remaining claims with prejudice.

### BACKGROUND

The following facts are taken from the operative complaint and assumed to be true solely for the purposes of this ruling.[1]

The plaintiffs name over 30 defendants, including telecommunications corporations, United States Senators and Representatives, Connecticut state and municipal officials, and Connecticut telecommunications and utility companies.[2] The 132-page amended complaint alleges a sweeping conspiracy between government and industry to install 5G, subject the public to forced COVID-19 vaccinations, and tamper with U.S. elections. Much of the complaint is also

---

[1] Doc. #247.
[2] *Id.* at 2, 6-18.

devoted to Flynn's personal grievances, including his view that he has been labeled a domestic terrorist and that he was illegally sabotaged in his campaign for Senator.

According to the plaintiffs, "5G is a cell disruptor through radiation," and "evidence suggests [it] is a biological weapon."[3] They claim that Connecticut installed a 5G grid during the COVID-19 pandemic in order to "create a one world order and grant control to foreigners of the American [e]lections."[4] Specifically, "[t]he same people that are radiating the tri-state area used the 5G and wireless infrastructure to hack the 2020 National Election and the 2022 Senatorial elections."[5]

With the rollout of 5G, the plaintiffs believe that "Ct is building a digital open-air concentration camp, using . . . surveillance/artificial intelligence learning and scoring for compliance social credits" that is "[c]ollected on servers in China" and will lead to a system in which "AI will allow the purchase of food with a new [c]urrency based on compliance."[6]

The plaintiffs also allege a broad array of risks posed by 5G, including that it "will make every child infertile, cancerous, and autistic" and that "[p]ulsed microwave millimeter/technology can be used for secretive data collection, harvesting, and . . . hacking the human mind and body."[7] They add that, during the rollout, "[f]orced Covid injections were given that . . . are not a vaccine."[8]

The extensive complaint contains only a few allegations of harm suffered by the plaintiffs themselves. Flynn states "I have type one diabetes. I am high risk and disabled," and "[t]hese

---

[3] *Id.* at 19, 39.
[4] *Id.* at 19; *see id.* at 25 (¶¶ 1-2) ("5G risk was taken for nationwide election hacking. 5g is [g]enocide and racketeering including [e]lection FRA[U]D . . . . Trump won by 269,976 [v]otes.").
[5] *Id.* at 27 (¶ 14).
[6] *Id.* at 99.
[7] *Id.* at 26 (¶ 7), 55 (¶ 89).
[8] *Id.* at 19.

defendants changed my environment and knowingly radiated every person in the state of CT."[9] He also claims that Congressman Jim Himes, allegedly involved in the conspiracy, "facilitate[d] the theft of . . . Flynn property," but does not specify what property was stolen or how Congressman Himes was involved.[10] He next alleges that "CAVU Corporation" denied him access to "the source code used to [h]ack 20 other states" in an election.[11] Finally, Flynn claims that the 57,962 signatures he allegedly collected in support of his run for Senate are "missing."[12]

The remainder of the harms to Flynn, Kelly, and Lindsey appear wholly unrelated to 5G, the pandemic, or elections. Flynn claims that Police Chief Brent Larrabee, not a defendant in this case, used a confidential informant to try to kill him, and that Chief Anderson of Darien Police looted nine of Flynn's bank accounts and "falsified an investigation."[13] He also alleges that state court marshal Joe Suda "had 5 phones stolen from US Republican Candidate Flynn," while Suda's brother, Mark, threatened Flynn in August 2023.[14] Next, he claims that the "CT State Police allowed 1,239 cashed stolen checks of Flynn [sic]."[15] Finally, Flynn complains of being labeled a domestic terrorist by various individuals and entities.[16]

Kelly and Lindsey claim to have been victimized in various ways by a Dr. Ahuja and his brother, Mike, and then repeatedly denied protective orders.[17] Kelly also claims that a prosecutor, Larry Tamaccio, refused to arrest Mike after he threatened to shoot Kelly.[18] Lindsey

---

[9] *Id.* at 55 (¶ 90), 60 (¶ 115).
[10] *Id.* at 7.
[11] *Id.* at 9 (¶ 14).
[12] *Id.* at 4; *see id.* 17, 24, 40.
[13] *Id.* at 15.
[14] *Id.* at 16-17.
[15] *Id.* at 42 (¶ 22).
[16] *Id.* at 12, 15, 42 (¶ 20), 53 (¶¶ 76-77), 113.
[17] *Id.* at 15-16, 21-22, 29 (¶ 25), 52 (¶ 69).
[18] *Id.* at 15.

adds that another prosecutor, Mike Bavona, prevented police from arresting Mike Ahuja after Ahuja allegedly raped her.[19]

Flynn filed his initial complaint in Connecticut state court, and it was subsequently removed to federal court, where several defendants filed motions to dismiss.[20] I granted these motions and dismissed the remaining claims and defendants without prejudice. *See Flynn v. Verizon Wireless*, 2023 WL 5153635 (D. Conn. 2023). In that ruling, I outlined various parameters that would govern any amended complaint Flynn might wish to file. These included the requirement that he set forth facts showing how each defendant proximately caused a concrete, particularized harm to each plaintiff; that each claim of injury cite the provision of law that was allegedly violated; and that any amended complaint take into account arguments defendants raised in their motions, including the preemption of state law claims by federal law. *Id.* at *5-6.[21]

Several defendants have once again filed motions to dismiss.[22] This ruling conducts a *sua sponte* review of the amended complaint before addressing the pending motions.

## DISCUSSION

This Court has authority to *sua sponte* review and dismiss a complaint if it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B).

---

[19] *Id.* at 15.

[20] *See* Docs. #1, #79, #81, #86, #113.

[21] I also advised Flynn that he must file any amended complaint on or before September 1, 2023, and that the Court would grant him only one opportunity to amend. *Flynn*, 2023 WL 5153635, at *6. He filed an amended complaint and a motion for leave to file on August 15. Docs. #238, 237. On August 30, I granted his motion for leave and advised him that the August 15 complaint would be operative unless he filed a superseding amended complaint on or before September 1. Doc. #244. The following day, Flynn filed a superseding complaint, which is the operative complaint for purposes of this ruling. Doc. #247. Although Flynn has since filed multiple more amended complaints, I decline to consider them because they were filed without good cause after the date that was set for him to file an amended complaint.

[22] *See* Docs. #255, #257, #258, #260, #281.

Additionally, "[b]ecause constitutional standing implicates the subject matter jurisdiction of the Court," it can be addressed *sua sponte*. *In re Clinton Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[23]

Because Flynn is a *pro se* plaintiff, the Court liberally construes the pleadings to raise the strongest arguments that they suggest. *See, e.g.*, *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (*per curiam*). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### Additional plaintiffs

As a preliminary matter, Flynn has named as additional plaintiffs Phil Marie, Heather Lindsey, Chris Kelly, and "97 John and Jane [D]oes."[24] But only Flynn, Lindsey, and Kelly have signed the complaint.[25] *See* Fed. R. Civ. P. 11(a) (requiring every pleading to "be signed . . . by a party personally if the party is unrepresented"). As the Court has explained repeatedly, including in its ruling dismissing the initial complaint, Flynn does not have authority to represent third parties and add them as co-plaintiffs because he is not an attorney.[26] *See Gottlieb v. Tyler*, 795 F. App'x 82, 83 (2d Cir. 2020) ("[A] non-attorney is not allowed to represent another individual in federal court litigation without the assistance of counsel.") (quoting *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009)). Accordingly, I evaluate the adequacy of the complaint solely with respect to those who have signed it as *pro se* litigants—Flynn, Kelly, and Lindsey—and not any other putative plaintiffs.

---

[23] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.

[24] Doc. #247 at 1.

[25] *Id.* at 1, 2.

[26] *See* Docs. #122, #183; *Flynn*, 2023 WL 5153635, at *2.

*Flynn's claims*

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014); *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022). An injury-in-fact must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S. at 158. A concrete injury is one that "must actually exist"—it must be "real and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

Flynn alleges that he is "high risk and disabled" and that the defendants "changed [his] environment and knowingly radiated every person in the state of CT."[27] But, as was the case in his initial complaint, he has once again failed to articulate any harm he himself has suffered as a result, whether actual or imminent. His claims that 5G causes cancer, infertility, and autism appear to be based entirely on speculation. And even if they were rooted in something more than conjecture, he offers no details about any injury that he himself has suffered. *See Faculty v. New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021) ("[S]tanding is not an ingenious academic exercise in the conceivable but requires a factual showing of perceptible harm.").

Thus, Flynn has no standing to bring a claim based on his susceptibility to any alleged radiation. *See, e.g.*, *Strunk v. New York*, 2019 WL 5788560, at *5-6 (N.D.N.Y. 2019) (plaintiff lacked standing to challenge defendants' implementation of 4G and 5G networks where he was "not seeking to remedy any personal and tangible harm" but instead "attempt[ing] to vindicate

---

[27] Doc. #247 at 55 (¶ 90), 60 (¶ 115).

his own idiosyncratic worldview by weighing in on various government policies"). Accordingly, I will dismiss all claims premised on radiation pursuant to Fed. R. Civ. P. 12(h)(3).

Similarly, Flynn's allegation that CAVU Corporation denied him access to a "source code" purportedly used to "hack" states in an election fails to specify how he was harmed by this refusal. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An asserted informational injury that causes no adverse effects cannot satisfy Article III."). So even if Flynn could show that CAVU owed him a legal duty to provide the information or violated some provision of law by refusing, Flynn would lack standing to sue. I will dismiss this claim per Rule 12(h)(3).

Flynn's next claim, against Congressman Himes, is barred by sovereign immunity. "Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Coritsidis v. Khal Bnei Torah of Mount Ivy*, 2024 WL 37122, at *3 (S.D.N.Y. 2024) (quoting *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)). "Plaintiffs bear the burden of establishing that their claims fall within an applicable waiver," and "[a]ny ambiguity regarding the Government's consent to be sued must be construed strictly in favor of the sovereign." *Id.* at *4. Flynn has made no showing of a waiver.

To the extent that the Court construes his claims against Himes as proceeding against the United States under the Federal Tort Claims Act (FTCA), which allows the United States to be sued in certain cases, the FTCA "requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Searles v. Robert*, 2023 WL 7271832, at *1 (2d Cir. 2023) (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)). The exhaustion requirement "is jurisdictional and cannot be waived," and it "extends to all suits, including those begun in state court." *Celestine*, 403 F.3d at 82. Flynn has

made no showing that he has exhausted his administrative remedies. Accordingly, he has not established this Court's jurisdiction to hear a claim against the United States. *See Manchanda v. Lewis*, 2021 WL 5986877, at *2 (2d Cir. 2021) ("[T]he burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory requirements, including exhaustion. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim.") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). Therefore, I will dismiss Flynn's claims against Himes pursuant to Rule 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B) for seeking monetary relief against a defendant who is immune.

Flynn's claims related to his Senate candidacy also fail on immunity grounds. He names various parties purportedly responsible for the missing signatures of his supporters, from "640 town clerks and registrars" who allegedly "destroyed" the signatures, to "The Secretary of State," who he claims "stole" them.[28] He also claims that "CT Secretary of State Mark Kohler falsified the CT 2022 election" and that Flynn gave his signatures "to Taffy Womack and those petitions are largely missing."[29] Construing this claim as against the Connecticut Secretary of State, it must fail. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) ("An action against a state official in his official capacity is deemed an action against the state itself.") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)*, abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

"Without a State's express waiver or an act by Congress . . . the Eleventh Amendment bars federal courts from adjudicating claims against a State, as well as its agencies and agents." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023). As with his claims against the

---

[28] *Id.* at 17, 24.
[29] *Id.* at 28 (¶ 19).

United States, Flynn has failed to show a waiver or applicable act of Congress that would permit this Court to hear his claims against the Connecticut Secretary of State or its officials.

Nor has he stated claims against any individual Connecticut state defendants in their personal capacities.[30] As the Court previously noted, "Connecticut state law provides that '[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment.'" *Flynn*, 2023 WL 5153635, at *4 (citing Conn. Gen. Stat. § 4-165(a)). Flynn has once again failed to show that the alleged conduct giving rise to his claims occurred outside the course of the officials' duties or was beyond the scope of their authority. *See ibid.* "[T]herefore these state officials have statutory immunity." *Ibid.* Even if Flynn plausibly alleged that the defendants' conduct was wanton and reckless, this exception does not extend to claims for monetary damages. *Ibid.* (citing *Miller v. Egan*, 265 Conn. 301, 319 (2003)). Accordingly, I will dismiss all claims against all Connecticut state defendants related to Flynn's Senate candidacy pursuant to 28 U.S.C. § 1915(e)(2)(B) for seeking monetary relief against immune defendants.

Next, Flynn brings various claims related to his being "labeled" a domestic terrorist. First, he alleges that U.S. Attorney Vanessa Roberts Avery "[u]sed the Patriot Act to [s]py on [d]omestic [p]atriots and called them [d]omestic [t]errorists. I am one." He argues that "[t]he Supreme Court is quite clear that people cannot be put on a Terrorist Watch list without a trial."[31] This is incorrect (even assuming that, by "trial," Flynn means some sort of verification). Although the Court, in *TransUnion LLC v. Ramirez*, held that one could state a claim for being included on a terrorist list, *TransUnion* also clarified that the list must be published or otherwise

---

[30] *See id.* at 130 (¶ 2) ("We request a dismissal of the sovereign immunity defense as we sue in their personal capacities.").
[31] *Id.* at 28 (¶ 21).

disseminated to third parties. 594 U.S. at 432-33, 439. Mere inclusion—or "labeling"—is not sufficient. *See id.* at 442 ("[Those] whose credit reports were not provided to third-party businesses did not suffer a concrete harm and thus do not have standing."). Flynn has not alleged that Avery disseminated any list that included him, nor that she communicated his alleged status as a domestic terrorist to anyone in any way. Thus, even assuming Avery were not protected by sovereign immunity, Flynn has not established standing.

To the extent he might bring a tort claim based on Avery's alleged "spying," it would fail on the same immunity grounds as his claims against Himes. Accordingly, I will dismiss his claims against Avery pursuant to Rule 12(h)(3) for lack of standing and 28 U.S.C. § 1915(e)(2)(B) for seeking relief against an immune defendant.

Flynn also alleges that Darien Police "complained that [he] was a 'domestic terrorist' to William Maloney, the State banking commission, the State Police and the FBI."[32] But police departments, as sub-units or agents of municipalities rather than independent legal entities, cannot be sued. *See Williams v. Hartford Police Dep't*, 2015 WL 13849474, at *1 (D. Conn. 2015); *Tobin v. Doe*, 2005 WL 701274, at *2 (D. Conn. 2005). And although Flynn lists Darien Police Chief Anderson as a defendant, he does not allege any personal involvement by Anderson.[33] This is a required showing for any claim Flynn might bring based on being labeled a terrorist, whether a constitutional violation under § 1983 or a tort claim for defamation. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023); *Khan v. Yale Univ.*, 27 F.4th 805, 817 (2d Cir. 2022). Accordingly, I will dismiss his claims against Darien police and Chief Anderson

---

[32] *Id.* at 15.
[33] He also claims someone named Jamie Stevenson labeled him a domestic terrorist. *Id.* at 53 (¶ 77). But even if Stevenson were a defendant in this case, Flynn once again fails to allege publication.

based on this alleged conduct per 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

Flynn's claims against Police Chief Anderson, state marshal Joe Suda, and "CT State Police" are all fatally non-specific. To survive review under § 1915(e)(2), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Grant v. ASPCA*, 2022 WL 2669926, at *1 (E.D.N.Y. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a court must 'generally accept the truth of a plaintiff's allegations' at the pleading stage, a complaint that contains labels and conclusions or naked assertions devoid of further factual enhancement will not suffice." *Rivas v. New York Lottery*, 2023 WL 2968185, at *5 (N.D.N.Y 2023).

Flynn claims that Chief Anderson "looted 9 of Flynn's bank accounts and falsified an investigation," that State court marshal Joe Suda "had 5 phones stolen" from Flynn, and that "CT state police allowed 1,239 cashed stolen checks of Flynn."[34] He fails to specify which accounts were "looted" or what he means by that term, which investigation was falsified and in what way, the manner in which Suda caused the phones to be stolen, or what state police actually did with the checks. Nor does he state when or where any of this conduct occurred. He has thus provided the Court with no plausible basis to infer that the defendants are liable to him. *See id.* at *5 (holding that plaintiff's description of her colleagues "screaming and glaring at her . . . and stalking and bullying her" lacked facial plausibility because she "provide[d] no factual details . . .

---

[34] *Id.* at 15-16, 42 (¶ 22).

such as who the employees were, what they said, or when or where any of these incidents occurred").

Flynn's remaining claims of concrete harm—a supposed attempted murder-for-hire scheme and a threatening phone call—are not only wholly unmoored from the general premise of his complaint, but are also alleged against individuals who are not defendants in this case: Police Chief Brent Larrabee and Joe Suda's brother, Mark. "The Court will disregard the factual allegations in Plaintiff['s] Amended Complaint regarding non-defendants except to the extent they may have relevance to the claims asserted against the Defendants in this lawsuit." *Henderson v. Fischer*, 2015 WL 1413965, at *2 n.2 (N.D.N.Y. 2015); *see Cruz v. Lashway*, 2009 WL 1734549, at *13 (N.D.N.Y. 2009) ("Plaintiff's claims against persons not named as Defendants will not be considered by the Court."). I will therefore dismiss these claims pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

### *Claims of Kelly and Lindsey*

Kelly's and Lindsey's alleged harms relate exclusively to two brothers, Dr. Ajay Ahuja and Mike Ahuja. These individuals are not named defendants but loom large throughout the complaint. According to the plaintiffs, Dr. Ahuja operates a "pill mill."[35] Kelly and Lindsey both claim he raped them.[36] Lindsey also accuses Mike Ahuja of rape.[37]

They complain repeatedly that Judge Kavenewsky denied them each protective orders— presumably against one or both Ahuja brothers.[38] They also claim defendant DA Tamaccio refused to arrest Mike Ahuja after Ahuja threatened to shoot Kelly. Similarly, they allege that

---

[35] *Id.* at 16, 52 (¶ 69).
[36] *Id.* at 21.
[37] *Id.* at 15.
[38] *Id.* at 16, 21, 29 (¶ 25).

defendant DA Bavona stopped a police officer from arresting Mike Ahuja for his alleged rape of Lindsey.

　　　None of the above allegations support a claim. The Ahuja brothers are not defendants, nor is Judge Kavenewsky. And the judge would be immune from suit based on these allegations even if he were properly named. *See Owens v. Conn.*, 2024 WL 1576779, at *3 (D. Conn. 2024) ("'It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions,' whether they are sued in their individual or official capacities.") (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)).

　　　It is not clear what power the district attorneys, Tamaccio and Bavona, would have to arrest either Ahuja brother. Construing the claims against them as arising instead from their refusal to prosecute, both DAs are protected by immunity. *See McCray v. Patrolman N.A. Caparco*, 761 F. App'x 27, 32 (2d Cir. 2019) ("[A]cts by a prosecutor that are 'intimately associated with the judicial phase of the criminal process' are shielded by absolute immunity.") (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Even if no immunity operated, "a private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person." *Doe v. Town of Greenwich*, 422 F. Supp. 3d 528, 537 (D. Conn. 2019); *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, I will dismiss Kelly's and Lindsey's claims pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim and seeking relief from defendants who are immune from such relief.

　　　For the reasons stated above, the plaintiffs' various alleged harms do not give rise to legally cognizable claims. And although the complaint names many other defendants, none of them have been connected to the harm alleged. Thus, the complaint cannot rest on claims against

any of these individuals or entities. *See Ford v. Harvey*, 2021 WL 5964891, at *2 (E.D.N.Y. 2021) (dismissing claims against defendants who were named in the caption of the complaint where plaintiff "fail[ed] to allege their personal involvement in any of the alleged violations").

Therefore, I will dismiss the complaint without addressing the additional arguments for dismissal that have been raised in the defendants' motions to dismiss. *See Mendes Da Costa v. Marcucilli*, 675 F. App'x 15, 17 (2d Cir. 2017) (affirming district court's dismissal of amended complaint that was "nearly 50 pages long . . . convoluted and repetitive" because it was "virtually impossible to link the various defendants to [plaintiff's] alleged injuries" and the complaint "discuss[ed] non-defendants and other events without explaining how they are involved with the alleged conspiracy"); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (*per curiam*) (upholding final dismissal of amended complaint that was "equally prolix" as the initial complaint and "for the most part incomprehensible").

CONCLUSION

For the reasons stated above, the Court GRANTS the defendants' motions to dismiss (Docs. #255, #257, #258, #260, and #281) with prejudice and DISMISSES with prejudice any remaining claims against any remaining defendants pursuant to Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B).

The Court has previously allowed an amended complaint, and the Court declines to allow another amended complaint on the ground that any amendment to the complaint would be frivolous or futile. In light of the Court's dismissal of this action, the Court DENIES as moot all other motions filed by the plaintiffs (Docs. #275, #277, #280, #283, #285, #286, #287, #288, #289, #290, #295, #297, #298, #299, #301, #302, #303, #304, #305, #306, #307, #308, #309, #310, #312, #314, #315, #316, #317, #318, #319, #320, #322, #323, #324, #326, #328, #330,

#332, #333, #334, #335, #338, #340, #341, #343, #344, #345, #346, #347, #348, #349, #350,

#351, #357, #361, #362, #363, #365, #366, #372, #374, #375, #377, #378, #381, #383, #386).

The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 23rd day of May 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge